41069. GEORGIA BANK & TRUST COMPANY v. HADARITS et al.

DECIDED FEBRUARY 3, 1965—REHEARING DENIED
FEBRUARY 16, 1965.

*Martin, Snow, Grant & Napier, Cubbedge Snow,* for plaintiff in error.

*George E. Saliba,* contra.

HALL, Judge. ■ There was evidence before the court that one Jackson on May 4, 1963, drew a check for $4,335 on his account in the defendant bank payable to the plaintiff. The plaintiff presented this check to the bank on June 26, 1963, and was informed that there were insufficient funds on deposit in the drawer's account to pay the check. At the plaintiff's request a collection and exchange teller at the bank gave the plaintiff a receipt dated June 26, 1963, showing the check was "Received for collection for account of Middle Georgia Lumber Co."

Affidavits of officers of the bank and of Family Federal Savings & Loan Association, which was at the time in process of foreclosing its mortgage on Jackson's house, state that on July 25 Jackson went to Family Federal's office with a check payable to him for $5,000, and Family Federal ascertained by telephoning the First National Bank & Trust Company, the drawee, that the check was good, and Jackson proposed to deposit the check in his account in the defendant bank and to give Family Federal two checks totaling over $1,000 upon loans payable to them.

An officer of Family Federal then telephoned an officer of the defendant bank and informed him of this arrangement, and the bank officer stated that the bank would pay Jackson's two checks to Family Federal provided the $5,000 check to be deposited by Jackson was paid. (At this time the balance in Jackson's account in the defendant bank was about $300.) Family Federal thereupon agreed to stop its foreclosure proceedings.

Later the same day Jackson deposited his $5,000 check and another check for $236.40 drawn on the Trust Company of Georgia to his account in the defendant bank. The drawee bank accepted the $5,000 check the same day. Upon instruction of an officer of the defendant bank with respect to a deposit of approximately $5,000 that had been made that day by Jackson, the bookkeeper wrote "Hold" on the stub of the ledger, which indicated that no checks should be paid from that deposit without authority from an officer of the bank.

After Jackson deposited the $5,000 check and it was accepted by the drawee bank on June 25, and after the bank took the plaintiff's $4,335 check for collection on June 26, the following charges were made to Jackson's account:

| Checks | Amount |
|---|---|
| June 27 | $ 74.25 |
| June 28 | 40.00 |
| June 28 | 2.65 |
| June 28 (check to Family Federal) | 988.64 |
| June 28 (check to Family Federal) | 81.00 |
| *Other Charges* | |
| June 28 (to cover overdraft on account of Georgia Central Construction Co.) | 280.06 |
| June 28 (payment on loan to defendant Bank) | 218.67 |

The bank sent Jackson a statement of his account as of June 28, 1963, showing a balance of $3,818.79 after payment of the above charges.

The teller holding the plaintiff's check for collection inquired of the bank's bookkeeping department on the mornings of June 27, June 28, and July 1, and was told that the check was not

good, and on July 2, on information from the bookkeeping department she stamped the check "Account closed" and returned it unpaid to the plaintiff.

The bank argues that it could rightfully fail to collect the plaintiff's check because the deposit made by Jackson on June 25 was a deposit for a specific purpose (the payment of the checks held by Family Federal). There is no evidence, however, that there was any direction by the depositor that this deposit was anything other than a general deposit.

A deposit in a bank is presumed to be general, in the absence of an agreement to the contrary. *Williams v. Bennett,* 158 Ga. 488, 494 (123 SE 683); 5A Michie, Banks and Banking, 19, § 3; 9 CJS 561, § 273. To create a special deposit, there must be a plain agreement between the bank and the depositor, expressed or clearly implied. 5B Michie, Banks and Banking 226, § 328 et seq; II Paton's Digest 1668, § 9.1; 9 CJS 562, § 274 et seq. The authorities cited by the defendant recognize this general rule. *Mayer & Lowenstein v. Chattahoochee Nat. Bank,* 51 Ga. 325; *Southern Exchange Bank v. Pope,* 152 Ga. 162 (108 SE 551).

The evidence set out above does not show an agreement to create a deposit for a specific purpose.

■ The evidence rather imports an attempt by Family Federal to have the bank accept Jackson's checks payable to it by means of a telephone conversation. This could not be effective because the law requires that the acceptance of a check be in writing. *McMillan v. Citizens &c. Nat. Bank,* 37 Ga. App. 813 (142 SE 194); *Code* § 14-1101 (cf. Georgia Uniform Commercial Code, effective January 1, 1964, §§ 109A-3—410, 109A-3—104); I Paton's Digest 10, § 5; 10 Am. Jur. 2d 550, § 579; 9 CJS 788, § 371.

■ Under the Negotiable Instruments Law, *Code* § 14-1707, repealed Ga. L. 1962, pp. 156, 427 (cf. Ga. Uniform Commercial Code, § 109A-3—409, Ga. L. 1962, pp. 156, 260) the holder or payee of a check which has not been accepted or certified has no right of action against the drawee bank based upon its failure or refusal to honor the check, even though at the time the check was presented for payment, the bank had sufficient funds of the drawer on deposit to pay it. *Jackson v. Fulton Nat.*

*Bank,* 46 Ga. App. 253 (167 SE 344) ; 10 Am. Jur. 2d 538, § 568; 9 CJS 687, § 342 (a).

The rule is different where a check has been accepted by the drawee for collection for the reason that the bank is the collecting agent of the holder. II Paton's Digest 1306, § 17:1. Once the bank undertakes this agency, it is required to use ordinary or reasonable diligence and care in making the collection. See *Code* § 13-2035, repealed by Uniform Commercial Code, Ga. L. 1962, pp. 156, 427 (cf. Georgia Uniform Commercial Code, § 109A-4—101 et seq.) ; 9 CJS 491, § 235. And if, from its failure to do so, loss results to its customer, it is liable to him in damages. *Bailie v. Augusta Savings Bank,* 95 Ga. 277, 283, 285 (21 SE 717, 51 ASR 74) ; *Planters Bank of Americus v. Albert Pick & Co.,* 38 Ga. App. 95, 96 (143 SE 441) ; 10 Am. Jur. 2d 672, § 701; II Paton's Digest 1314-1315, § 17:11.

The bank argues that it breached no duty in failing to collect the plaintiff's check because, by the terms of assignment in a note executed by Jackson, Jackson's chose in action against the bank which arose when Jackson made the deposit on June 25 instantly became the bank's property and therefore there was never a credit due Jackson by the bank from which the plaintiff's check could have been collected. The evidence showed that the bank held a note of Jackson dated May 3, 1963, in the amount of $5,000 payable one year from date, upon which on June 25, 1963, there was due $4,800, and it had been agreed between Jackson and the bank that $200 plus interest would be paid on the note on the 20th day of each month by making a charge to Jackson's checking account. The note recited that it was secured by a deed to secure debt to real estate and provided: "The payee or holder hereof is hereby given a lien for this note and all other indebtedness of the undersigned . . . to such payee or holder hereof upon all property left with said payee and not herein assigned and conveyed to the holder whether now or heretofore or hereafter deposited, and upon any drafts, notes or other items deposited for collection by the undersigned . . . and all such accounts are hereby assigned to the bank as security for the payment of this note." The affidavit of a bank officer states that on July 25, 1963, he knew that

Jackson was insolvent, that his home was being advertised for sale under Family Federal's power of sale, and that he had drawn checks on his account in excess of the amount on deposit; and that when the drawee bank accepted the check deposited by Jackson on June 25 the officer and the bank president conferred and determined to exercise the bank's right under the note to apply the balance of his account after payment of the Family Federal checks and the overdraft of Central Georgia Construction Company to Jackson's note to the bank; but no entry was made on Jackson's account on that date to indicate this fact because it was not then known whether the $236.40 check deposited by Jackson would be paid, but the "Hold" entered on the deposit was for this purpose, and on July 1, 1963, the bank credited the deposit on hand to Jackson's note to the bank.

The bank relies on *Macon Nat. Bank v. Smith,* 170 Ga. 332 (153 SE 4). (See also 5A Michie, Banks and Banking 312 et seq., § 126.) That case held that, as between a bank and a garnishing creditor of the maker of a note payable to the bank, the bank had priority in the account of the maker. The note in that case provided that the maker's bank deposits "may be applied at any time . . . in whole or part payment of this loan." The Supreme Court's opinion (p. 338) stated that, under this provision, "The interest of the bank as transferee of the deposit account vested at the date of the note . . . prior to summons of garnishment . . . and therefore was entitled to preference, as against . . . the garnishing creditor, relatively to the amount on deposit . . . on the date of service of the summons of garnishment. It may be remarked that the garnishing creditor did not acquire a better status with reference to this fund as against the bank than the company [the depositor] occupied." There are several dissimilarities in the *Macon Bank* case that make its application to the present case doubtful. The effect of the language in the two notes regarding the bank deposits as collateral security is not necessarily the same. And in the *Macon Bank* case the party over whom the bank was held to have preference—the garnishing creditor—was one to whom the bank owed no duty.

We will assume arguendo, but do not decide, that under the

terms of the note in the present case the bank's rights in all existing and future deposits of the maker vested on the dates of the note and each deposit made thereafter. The evidence shows nevertheless than the bank treated the account as the depositor's property on June 27 and June 28 by paying checks that it was under no duty, to their holders, to pay. In doing so the bank necessarily relinquished its present right to hold the account, at a time when it held the plaintiff's check for collection and owed the plaintiff the duty of a collection agent.

Though the bank may have had a right under the assignment to apply the account to payment of its note, when the bank after it took the plaintiff's check for collection relinquished this right, the account became accessible and it then had in it sufficient funds from which to collect the plaintiff's check and the bank violated its duty to the plaintiff to exercise reasonable diligence in collection when, for reasons of its own as stated in its officer's affidavit, it paid on presentation checks it was not obligated to pay but failed to collect the plaintiff's check then held for collection. Accord Paige v. Springfield National Bank, 12 Ohio App. 196; 5A Michie, Banks and Banking, 532, § 220; II Paton's Digest 1314, § 17:11.

*Judgment affirmed. Bell, P. J., and Frankum, J., concur.*