1631

RICHARDSON'S RESTAURANTS, INC., Respondent-Appellant v. The NATIONAL BANK OF SOUTH CAROLINA, Appellant-Respondent.

(403 S.E. (2d) 669)

Court of Appeals

*Ramon Schwartz, Jr.*, and *Harry B. Burchstead, Jr.*, both of *Schwartz, McLeod, DuRant & Burchstead*, Sumter, *for appellant-respondent.*

*Marvin E. McMillan, Jr.*, of *Weinberg, Brown & McDougall* and *J. Edward Bell, III*, of *Bell & Bagley*, Sumter, *for respondent-appellant.*

Heard Dec. 12, 1990; Decided March 11, 1991.

Rehearing Denied April 24, 1991.

BELL, Judge:

Richardson's Restaurants, Inc., sued the National Bank of South Carolina (NBSC), alleging damages for (1) conversion; (2) negligence; and (3) violation of the South Carolina Unfair Trade Practices Act.[1] NBSC denied Richardson's allegations and affirmatively pleaded (1) lack of standing; (2) failure to state a cause of action; and (3) contributory negligence. It also counterclaimed against Richardson's for breach of contract and crossclaimed against Gurney T. Richardson, as a third party defendant, for breach of a guaranty agreement. The third party action ended in a voluntary nonsuit. Before trial, the circuit court granted NBSC summary judgment on the Unfair Trade Practices claim. The case was tried to a jury on the remaining claims and defenses. At appropriate times

---

[1] Richardson's also sued Robert A. Kinsey, Jr., the owner of Complete Computer Company, Inc. Kinsey was dismissed as a party defendant after he declared bankruptcy.

during the trial, NBSC moved for directed verdicts. The court denied the motions. The case was submitted to the jury. On the conversion claim, the jury returned a verdict for Richardson's for $18,885.39 plus interest in actual damages and $3,000.00 in punitive damages. On the negligence claim, they returned a verdict for Richardson's for zero damages. On the counterclaim for breach of contract, the jury awarded NBSC $4,894.54 plus interest. Both parties moved for judgment notwithstanding the verdict and for a new trial. The judge denied these motions. Both parties appeal. We reverse the judgment against NBSC and affirm the judgment against Richardson's.

The material facts are undisputed. Richardson's Restaurants, Inc., owns three Western Sizzlin' Steakhouses located in Sumter, Columbia, and Cayce, South Carolina. It is a banking customer of the South Carolina National Bank (SCN). At no time relevant to this suit did Richardson's have any accounts with NBSC. In May, 1987, Richardson's retained the services of Complete Computer Company, Inc., to process its payroll for about 150 employees at the three restaurants.

Computer Company engaged in two lines of business: computer equipment sales, which it started in 1982, and a payroll processing service, which it started in January, 1986.

In 1982, it opened a business checking account with NBSC. This checking account was used to pay Computer Company's general operating expenses and overhead. In December, 1985, Robert A. Kinsey, Jr., the owner and president of the corporation, opened a second checking account with NBSC. This account was opened in Computer Company's name and was designated its "payroll system" account. The preprinted checks for this account bore the name "COMPLETE COMPUTER COMPANY INCORPORATED," the corporate logo and a side legend in smaller type that said "Payroll System." When he opened the account, Kinsey told NBSC that Computer Company was starting a payroll service in January, 1986, that the account would be used to deposit checks from various customers using the service, and that each customer's payroll checks would be drawn on the account. No restrictions were

placed on funds deposited in the account. However, Kinsey advised NBSC that it would be a "washout" account.[2]

During the life of the account, checks from as many as forty different employers were deposited in this single account. The funds were not segregated by employer or in any other manner. Occasionally, Computer Company drew on the account to pay other corporate debts. Kinsey testified that this money was "reimbursed" to the account. In January, 1988, Computer Company was serving twenty-eight employers through the account.

From the outset, Computer Company had difficulty maintaining sufficient funds in the account to cover drafts and regular service charges. The account was frequently overdrawn. As an accommodation to Computer Company, NBSC honored payroll checks in overdraft, for which it charged a standard insufficient funds fee per check. Computer Company was never able to resolve the problem of overdrafts. Finally, the problem became so acute that NBSC notified Kinsey it would no longer honor any checks in overdraft starting Monday, February 1, 1988.[3]

On Friday, January 29, 1988, Computer Company delivered payroll checks to Richardson's for distribution to its employees. That same day, Kinsey deposited Richardson's check payable to "Complete Computer" in the sum of $18,885.39. This was part of a total deposit of $48,405.54 in checks from Computer Company's customers. NBSC paid $21,700.52 in payroll checks on January 29th and an additional $13,124.74 on February 1st, reducing the available balance in the payroll system account to $7.58. The Bank returned for insufficient funds $53,435.48 in payroll checks, including about $11,000.00 in Richardson's payroll checks.

---

[2] A "washout" account is one which there is no regularly maintained balance. Funds are deposited only to the extent necessary to cover designated checks to be drawn subsequently on the account. Once the designated checks have cleared, the balance returns to zero.

[3] NBSC previously had advised Computer Company that it would no longer pay in overdraft effective November 1, 1987. The account balance was positive on November 1. On November 2, Kinsey met with a bank officer and requested more time to work out the overdraft problem. NBSC relented and continued to permit overdrafting until February 1, 1988.

Upon learning that its payroll checks had been dishonored, Richardson's owner, Gurney Richardson, spoke with officers of the Bank. He was told there were insufficient funds in the Computer Company account to pay the checks. Richardson promised that if NBSC would honor payroll checks drawn to the order of Richardson's employees on the Computer Company account, Richardson's would reimburse NBSC for the amount of all such checks drawn against insufficient funds. The Bank thereafter honored thirty-one Computer Company checks written to Richardson's employees against insufficient funds. The sum of these checks was $4,894.54. Richardson's never reimbursed NBSC for this amount.

## I.

We first consider NBSC's claim that it was entitled to a directed verdict on the cause of action for conversion.

Conversion is the unauthorized exercise of ownership over the personal property of another. *Sherer-Gillete Co. v. Moore-Barnes Co.*, 114 S.C. 387, 103 S.E. 766 (1920). To prevail in an action for conversion, the plaintiff must prove either title or right to possession of the property at the time of the alleged conversion. *Causey v. Blanton*, 281 S.C. 163, 314 S.E. (2d) 346 (Ct. App. 1984). Conversion cannot arise from the defendant's exercise of a legal right over the property. *Castell v. Stephenson Finance Co.*, 244 S.C. 45, 135 S.E. (2d) 311 (1964). There can be no conversion of money unless there is an obligation on the defendant to deliver a specific, identifiable fund to the plaintiff. *Dawkins v. National Liberty Life Insurance Co.*, 263 F. Supp. 119 (D.S.C. 1967).

In this case, Richardson's alleged that NBSC converted funds in Computer Company's payroll service account by using them to satisfy bank charges that Computer Company owed the Bank on the account. However, Richardson's introduced no evidence to show it had title or a right to possession of funds in the account. To the contrary, Computer Company's deposits were general deposits in which Richardson's checks were commingled with the checks of its other Computer Company customers. *See Rush v. South Carolina National Bank*, 288 S.C. 560, 343 S.E. (2d) 667 (Ct. App. 1986). When deposited, they became part of the Bank's general account against which Computer Company's account received a credit.

*Id.* This was so, even though Computer Company intended to use the account for a particular purpose. *Id.*

When NBSC in good faith accepted Richardson's checks for immediate credit to Computer Company's account, it took title to the checks as a holder in due course. *Moffatt County State Bank v. R.J. Pinder,* 11 Utah (2d) 89, 355 P. (2d) 210 (1960). Likewise, when Richardson's checks were paid by SCN, NBSC became the owner of the funds. As a matter of law, Richardson's had no legal or beneficial interest in them. Therefore, it could not maintain an action for conversion against NBSC.

Conversely, NBSC had no legal obligation to deliver or apply any funds on Richardson's behalf. Moreover, it had a legal right under its deposit agreement with Computer Company to debit the payroll service account for bank charges incurred for processing checks and honoring checks against insufficient funds. The exercise of this legal right was not a conversion.

For these reasons, the circuit court erred in failing to direct a verdict for the Bank on the conversion claim. Accordingly, we reverse the judgment for conversion.

## II.

The court also erred in failing to direct a verdict or to grant a judgment n.o.v. for NBSC on the negligence cause of action.

In order to prevail on a claim of negligence, the plaintiff must show (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach. *Estate of Cantrell v. Green,* — S.C. —, —, 397 S.E. (2d) 777, 779 (Ct. App. 1990). If he fails to establish any one of these elements, his cause of action fails. *Id.*

The negligence claim rests on the premise that NBSC held funds belonging to Richardson's. From this premise Richardson's then argues that NBSC owed it a duty to warn or advise that the Bank was debiting Computer Company's payroll service account for overdraft and bank service charges and that it would dishonor the January 29th payroll checks.

Richardson's theory of negligence is without merit as a matter of law. As we have already stated, Richardson's had no

right to funds held by the Bank and the Bank had no duty to deliver or apply funds in its possession on Richardson's behalf. Thus, on Richardson's own reasoning there was no duty to warn about the state of Computer Company's account.

Moreover, as we have stated, NBSC had a legal right to debit Computer Company's account for bank charges incurred. These acts did not constitute a breach of any duty in negligence. Furthermore, NBSC had a right to refuse to pay checks drawn against insufficient funds. *McMichen v. Georgia State Bank*, 148 Ga. App. 680, 252 S.E. (2d) 198 (1979). Thus, dishonor of such checks breached no duty imposed by law.

Finally, Richardson's failed to prove it was damaged by any act or omission of NBSC. The jury found no damages on the negligence cause of action. In negligence, proof of actual damage is an essential element of the tort. Damage is the gist of the action. *Gray v. Southern Facilities, Inc.*, 256 S.C. 558, 566, 183 S.E. (2d) 438, 442 (1971) (it is basic that a negligent act is not itself actionable and only becomes such when it results in damages to another). There is no liability if there is no actual damage. It is elementary law that there is no such thing as "negligence in the air." *South Carolina Insurance Co. v. James C. Greene & Co.*, 290 S.C. 171, 176, 348 S.E. (2d) 617, 620 (Ct. App. 1986).

Because Richardson's failed to prove any element of its cause of action for negligence, we reverse the judgment of liability against NBSC as a matter of law.

## III.

On cross appeal, Richardson's asserts the circuit court erred in refusing to set aside the jury's verdict for breach of its promise to reimburse NBSC for payroll checks paid to its employees against insufficient funds. Richardson's admits the promise was made and that the Bank did honor payroll checks totaling almost $5,000.00 against insufficient funds. It also admits it has not reimbursed the Bank for these payments. Its defense to NBSC's claim for reimbursement is that Gurney Richardson made the promise to reimburse based on a misunderstanding of the facts.

Mr. Richardson testified that he spoke with the Bank on February 3, 1988, after he learned it had dishonored an employee's payroll check. The Bank told him the check was dis-

honored for insufficient funds, but gave no further details. Mr. Richardson assumed from this information that Kinsey had failed to deposit Richardson's check to Computer Company on January 29th. On the basis of this assumption, he made the promise to reimburse.

In essence, Richardson's claims the promise was not binding because it was based on a unilateral mistake. At common law, a party to a contract cannot avoid it on the ground that he made a mistake if there has been no misrepresentation, there is no ambiguity in the terms of the contract, and the other party has no notice of the mistake and acts in good faith. *L-J, Inc. v. South Carolina State Highway Department*, 270 S.C. 413, 242 S.E. (2d) 656 (1978). An erroneous impression taken up from the suggestion of the party's own mind does not relieve him from the contract. *Gilchrist v. Martin*, 8 S.C. Eq. (Bail. Eq.) 492 (1831) (dictum).

There was evidence from which the jury could find that any misimpression on Mr. Richardson's part arose solely from the suggestion of his own mind, not from the information given him by the Bank. Likewise, the jury could have concluded that NBSC was unaware of Mr. Richardson's misimpression and dealt with him in good faith. There was no evidence that Mr. Richardson asked for any additional information concerning the overdrawn account, that he considered any additional information material, or that he communicated to the Bank his assumption that Kinsey had failed to make a deposit. The jury could also reasonably have believed that Mr. Richardson's claim that he made a mistake had nothing to do with his initial promise, but instead was a pretext for avoiding a contract.

In an action at law tried to a jury, the reviewing court must sustain the judgment if there is any evidence to support the verdict. *Blackwell v. Blackwell*, 289 S.C. 470, 471, 346 S.E. (2d) 731, 732 (Ct. App. 1986). Here the jury's finding that Richardson's breached a binding promise to reimburse NBSC for payroll checks paid against insufficient funds was supported by the evidence. Accordingly, we affirm the judgment against Richardson's.

Affirmed in part, reversed in part.

SHAW and CURETON, JJ., concur.